UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **HOWARD PERCHII,** | ) )<br>) |
| Plaintiff, | ) Case No. 3:21-cv-767-GNS<br>) |
| v. | ) *Filed Electronically*<br>) |
| **VERISYS CORPORATION** | ) )<br>) |
| Defendant. | ) )<br>) |
| Serve: CT Corporation System<br>306 W. Main St. Ste. 512<br>Frankfort, KY 40601 | ) ) ) ) ) ) |

* * * * *

# COMPLAINT

## JURISDICTION, VENUE, AND PRELIMINARY STATEMENT

1. This honorable Court has jurisdiction over this matter under 28 U.S.C. §1331, §1332 (a)(i) and §1337(a).

2. Venue is proper in the United States District Court Western District of Kentucky under 28 U.S.C. §§1391(b)-(c).

3. This is an action for damages in excess of $75,000.00 filed by Plaintiff Howard Perch, II ("Perch"), an individual Florida consumer, who was the subject of a background check for purposes of his employment for the negligent and/or willful violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§1681, et, seq. by Verisys Corporation ("Verisys").

4. Plaintiff, Perch, is a resident of Volusia County, Florida.

1

5.      In January, 2020, Defendant, Verisys prepared a grossly inaccurate misleading consumer report or consumer report containing criminal information through its FACIS product as a background check for non-party B. E. Smith, LLC. (BES), Perch's prospective employer, which referenced an arrest in 2017.  Verisys provided the criminal background information on Perch knowing that it could be used for purposes of employment to non-party Accurate Background, LLC, (Accurate) who was contracted by BES.  Perch authorized Accurate to conduct the background check but did not authorize Verisys nor did Verisys seek Perch's consent to do so.  Perch's arrest records were sealed by order of the circuit court in Volusia County, Florida in October, 2018 pursuant to Fla. Stat. §943.059, Florida's criminal record sealing statute.  Under the provisions of that statute, Perch could deny under oath the arrest and criminal records and not be subject to perjury. Verisys never informed Perch of the background check it was compiling for his employment before or after it sent the criminal information to Accurate.

6.      As a proximate result of this inaccurate, misleading, false consumer credit report used as a background check for employment purposes with BES, BES rescinded its conditional offer of employment with Perch and stopped the remaining step in processing Perch's job application.  BES used the information from Verisys that it received in real time from non-party Accurate to rescind its offer of employment where Perch would have worked at a host hospital in Illinois, which has a ban the box rule of law.

7.      Perch seeks to recover damages for Verisys's negligent, intentional, willful and/or with reckless disregard violations of FCRA, including but not limited to punitive damages under FCRA.

8.      At all times material here to, Verisys is a Virginia corporation a Credit Reporting Agency (CRA).  During the relevant time period these events occurred, Verisys Corporation had

its principle place of business in Alexandria Va., where it is incorporated. However, in September, 2021, Verisys announced a merger with Aperture Credentialing, LLC and that its principle place of business (headquarters) has been relocated to Louisville, Kentucky, the former headquarters of Aperture. (*See* Verisys Press Release, attached as Exhibit A to this Complaint).

9. At all times material, non-party Accurate is a California corporation a CRA whose principal place of business is in California. Accurate conducts business in all 50 states and is registered to conduct business in Florida.

10. At all times material non-party BES is a Kansas corporation and is a health care industry employer whose principle place of business is Kansas City and is registered to conduct business in Kansas, Florida and Illinois. BES conducts business in all 50 states and provides executives to various businesses in the Health Care Industry including, but not limited to, hospitals.

11. A prior lawsuit was filed on May 1, 2021, in the Middle District of Florida, Orlando Division Case No. 6:20-cv-00767-PGB-GJK against Verisys, Accurate and BES. Verisys was dismissed because of lack of personal jurisdiction-minimum contacts, without prejudice. Both Accurate and BES resolved the Plaintiff's claims against them, Accurate during litigation and BES during arbitration.

**FACTUAL ALLEGATIONS**

12. On or about January 8, 2020, Perch received an unsolicited email from non-party BES asking if he would be interested in a manager position in the health care industry at non-party SSM Health Good Samaritan Hospital in Mt. Vernon, Illinois, ("SSM"), the host hospital.

13. BES hires a candidate as its employee then places its employee to work at a host hospital. In this case Perch would be employed in Illinois where non-party SSM is located.

14. Perch acknowledged his interest and forwarded his resume which was confirmed by a return email by BES.

15. Perch then spoke to BES recruiter, Ms. Suzanne Cox, who after reviewing Perch's resume stated that she would begin the hiring process and told Perch that he should watch his email for further correspondence from BES regarding references and other hiring procedures.

16. Ms. Cox informed Perch by phone that the manager position was listed as an interim position, no end date had been established with SSM and that SSM was looking for an interim manager to lead them through a CARF Certification. A CARF Certification typically takes between two to three years to complete.

17. Perch had experience in the CARF certification process. On January 9, 2020, Ms. Cox of BES asked Perch when he would be able to begin his employment. Perch responded, the beginning of February, 2020. She also asked Perch if once he completed his work as interim manager at SSM, if he would like a permanent position with SSM. Perch responded yes.

18. On or about January 9, 2020, Perch received two emails from BES, one asking for his references and the other asking for him to complete Human Resources paperwork for his hiring.

19. Perch signed into his account at BES and began the hiring process. Perch received an email from Christina Birkoholz of BES that set forth his salary of one hundred twenty-five thousand dollars ($125,000.00) per year along with the hiring requirements from BES for the host hospital, SSM. These were a physical, a drug test, lab work and a background check.

20. On or about January 10, 2020, Perch completed the Hirevue video interview at the request of BES and Suzanne Cox. Suzanne Cox then scheduled a phone interview with a V.P. of BES, Ms. Angie Dale, for the same day. Perch completed his phone interview with Ms. Dale who

also asked Perch if once his work was completed as interim manager with SSM if he would like a permanent position with SSM. Perch affirmed that he would.

21. On or about January 10, 2020, Perch also corresponded with Sharifia Smith of BES regarding a date for a phone interview with SSM the host hospital. He also signed a consent to release information, an emergency contact form, employment application, EEOC voluntary information, job description, motor vehicle policy and signed an acceptance of a written offer of employment with BES.

22. On or about January 11, 2020, Perch submitted nine references to BES.

23. On January 11, 2020, Perch received three documents from Accurate which required Perch's review and signature. Document one required Perch to consent to an "investigative consumer report" to be obtained by Accurate and Perch consented. The second document required Perch to consent to a "consumer report" to be conducted by Accurate and Perch consented. The third document required Perch to acknowledge through his signature that he received documents entitled "disclosure regarding background check" and a "summary of your rights under the Fair Credit Reporting Act". Perch authorized receipt and through his signature consented that Accurate would conduct its own background check of him.

24. At no time did Perch ever authorize Verisys, another CRA to conduct a background check on Perch and release any information regarding Perch to Accurate. At no time did Perch ever authorize Accurate to subcontract their background check work to any other CRA, like Verisys. Verisys conducted a background check on Perch without obtaining his consent and released the results of this background check to Accurate who in turn released it to BES. Perch was not notified that anyone would be conducting a background check of him except BES stating it would be Accurate to conduct his background check and requested his consent.

25. Unbeknown to Perch at the time he authorized BES to have Accurate conduct a background check, Verisys is a CRA who collects and maintains consumer files, which files contain public record information concerning, among other things: sanctions, exclusions, debarments, and disciplinary actions taken against providers in the healthcare industry and was compiling outdated, inaccurate and false criminal information pertaining to him.

26. Verisys bundles this information and markets it under its exclusive trademarked name, "FACIS" (Fraud and Abuse Control Information System).

27. According to Verisys, "FACIS represents an aggregation of data on medical providers who have been sanctioned or disciplined by governmental state and federal agencies, boards, and regulatory bodies".

28. Verisys further describes FACIS as "A current and historical database of sanctions, exclusions, debarments and disciplinary actions for all provider types at federal and state levels". Perch has never been sanctioned, excluded, debarred or disciplined as a provider.

29. Verisys "leverages the powerful FACIS solution to pull information from Federal and State sources and Tricare plus all state boards that issue certificates or licenses to practice."

30. Verisys markets FACIS as a tool to screen job applicants, annually review employees, and to monitor employees on an ongoing basis.

31. FACIS is a "consumer report" under 15 U.S.C. §1681a(d), which includes "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purposes of serving as a factor in establishing the consumer's eligibility

for….employment purposes[.]" Verisys markets its services to healthcare employers for purposes of making employment decisions based on the information contained in Verisys's database.

32. Verisys and non-party Accurate are defined as a "consumer reporting agency" under 15 U.S.C. §1681a(f), which includes "any person which, for monetary fees, dues or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling and evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

33. When a consumer reporting agency furnishes a consumer report for employment purposes containing information which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment, the consumer reporting agency, at the time the public record information is reported to the potential employer, must notify the consumer of the fact that adverse public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported. See 15 U.S.C. §1681k(a)(1). Verisys failed to do this in Perch's case.

34. Alternatively, a consumer reporting agency must maintain strict procedures to insure that reported public record information is accurate, complete and up to date. See 15 U.S.C. §1681k(a)(2).

35. On or about January 13, 2020 Perch underwent a physical examination, a drug test and invasive lab work in Volusia County, Florida for hiring.

36. On or about January 14, 2020 at 12:30 p.m. Perch had a scheduled phone call with Ms. Angie Dale, the Vice President of BES to discuss the BES host hospital, SSM located in Mt. Vernon, IL.

37. On or about January 14, 2020, Ms. Angie Dale, the Vice President of BES contacted Perch by telephone stating that she 'needed to discuss something' with him.

38. During that telephone conversation Ms. Dale informed Perch that 'something has appeared on your background check.' She went on to read about an alleged arrest of Perch in 2017 from a report that she received from Accurate. She did not initially disclose to Perch that the information originated from a FACIS report reported by Verisys.

39. Perch informed Ms. Dale that the information was false, outdated criminal information and that he would be disputing it.

40. Perch requested a copy of the background report from BES that Ms. Dale was referencing. She responded that it was not complete and only herself, BES and Accurate had real time access to the background report as it was being compiled but Perch would not have any access.

41. Ms. Dale went on to explain that BES could not hire Perch and rescinded BES's contract because of the negative criminal information on the background report that was provided to her by Accurate regarding his 2017 arrest. Ms. Dale then notified Perch that she would be canceling Perch's scheduled phone interview with SSM's Vice President and Chief Nursing Officer, Ms. Lisa Demarco, which Sharifa Smith of BES scheduled to occur on January 15, 2020 with Perch. As a result of this false, out dated, unverified information about a 2017 arrest that was sealed by a court order under Florida law in Volusia County which Verisys reported to Accurate and Accurate reported to BES, Perch was not hired.

42. Ms. Dale rescinded BES's contract of employment proximately resulting in lost wages of one hundred twenty-five thousand dollars ($125,000.00) per year and emotional distress.

43. Fla. Stat. §943.059(4)(a) (2018) states in relevant part:

(4) EFFECT OF CRIMINAL HISTORY RECORD SEALING… (a) the subject of a criminal history record sealed under this section…may lawfully deny or fail to acknowledge the arrests covered by the sealed records….

44. The statute lists ten exceptions to this rule, none of which apply to Perch.

45. Since Ms. Dale refused to provide Perch a copy of the report that she was relying upon in rescinding BES's offer of employment, Perch continued to press Ms. Dale for details surrounding the inaccurate, outdated, unverified and false criminal information she continued to refer to. Ms. Dale finally stated to Perch that she received the information from a "FACIS" report from Accurate without referencing Verisys. Upon conclusion of the phone call, Perch began researching "FACIS" and "FACIS Report" and learned that the "FACIS" report is a proprietary and trademarked product of Verisys. The "FACIS" report is used exclusively as part of a background check in the healthcare industry which Verisys markets as the gold standard of employment in the healthcare industry. It is unknown why a FACIS report would ever have been ordered for Perch as Perch would be an interim manager, not a health care provider.

46. Verisys fully understands the requirements of FCRA, that the information is provided in a background check on an individual be up to date, accurate and doesn't involve matters that have been sealed. Verisys lists a few reasons an affected individual like Perch would file a dispute like matters that have been sealed. (See Exh. B. Verisys's commitment to correct such information).

47. Unfortunately, not only did Verisys fail to inform Perch of his FCRA rights or that it was providing criminal information to a prospective employer (FACIS is used by the Health Care Industry to investigate "providers"), it transmitted the information to Accurate without ever giving Perch an opportunity to object and correct it.

48. Perch immediately contacted Verisys by email on January 14, 2020 and requested a full file disclosure report after he had learned that "FACIS" is the exclusive product of Verisys.

49. Perch then emailed Ms. Jodi Shegrud, a Corporate Compliance Coordinator at Verisys, specifically asking for a full file disclosure report from Verisys. Perch received a confirmation email from Verisys confirming receipt of his request on January 14, 2020. Verisys promised Perch that he would receive a copy of full file disclosure report within fifteen (15) days.

50. On or about January 15, 2020, Accurate informed Perch via email that his background screening had not been completed and once it was finished it would provide him with a copy of the report which is in violation of the FCRA, as Accurate was transmitting unverified, incomplete, inaccurate information supplied to it by Verisys to BES for BES to make an employment decision in real time as Verisys was Google harvesting information. The background report showed that no results were found through a national criminal database search, a discrepancy that any competent CRA would have investigated before furnishing a consumer report containing outdated, inaccurate, incorrect, false and misleading criminal history information.

51. On or about January 17, 2020, Perch disputed the false criminal report with Accurate via email and certified mail to no avail as Perch was forced to wait seventeen days to receive a corrected background report from Accurate eliminating the unverified criminal misinformation after he disputed it with Accurate and after his BES employment had already been rescinded by BES because the well had already been poisoned by Verisys. Verisys's actions were willful and with reckless disregard of FCRA. Those actions that were not intentional were negligent under FCRA.

52. Accurate claimed it was unable to provide Perch with a copy of the background check when he requested it as Accurate stated the background check report was not yet complete.

53. On January 24, 2020, Perch received his full file disclosure report by email from Verisys which included its level 3 FACIS report where it was disclosed that a DEA media release containing arrest information dated February 7, 2017 regarding Perch's arrest was produced by Verisys as part of its level 3 "FACIS" report and transmitted to Accurate without verification. Simply stated, Verisys relied on a Google search without contacting the DEA or reading the DEA website disclaimer warning users not to rely on this information.

54. Perch immediately went to the DEA website and secured a copy of the press release Verisys sent to Accurate.

55. While Perch was accessing the DEA website, he discovered that the DEA website had a section titled "Legal Policies and Disclaimers" and began to read the legal policies and disclaimers on the DEA website. Perch discovered that the DEA had a published disclaimer, readily accessible to anyone accessing the DEA website which reads in part, "The department makes no claims, promises or guarantees about the accuracy, completeness or adequacy of the contents of this site….the information appearing on this website is for general informational purposes only and is not intended to provide legal advice to any individual or entity. We urge you to consult with your own legal advisor before taking any action based on information appearing on this site or any site to which it may be linked." Had Verisys read and implemented the recommendations within the DEA disclaimer, the negative content would not have been reported to Accurate and the multiple FCRA violations which occurred in this case could have been easily avoided.

56. A check of local court records was never conducted by Verisys before transmitting the criminal history. The background report showed that absolutely no results were found through a national criminal database search, a discrepancy that any competent CRA would have

investigated before furnishing a consumer report containing false, outdated, incorrect and misleading criminal history information. These facts of the DEA disclaimer and the criminal history database showing no results were red flags that the information Verisys was harvesting was outdated, superseded and inaccurate. Eventually, as the facts detail below, Verisys admitted Perch was correct by removing the outdated, inaccurate, unverified criminal information from both of their reports pursuant to FCRA §611, 15 U.S.C. 1681(i) after Perch disputed it with Verisys. However, by then BES had already rescinded Perch's employment based upon the information that was subsequently removed by Verisys and Accurate.

57. On or about January 24, 2020 Perch had received written correspondence via certified US mail from Verisys acknowledging his full file disclosure request.

58. On or about January 27, 2020, Perch notified Jodi Shegrud of Verisys via email that Perch was formally disputing the entire contents of his background information, which Verisys had reported on the level 3 FACIS report to Accurate and BES. Perch notified Ms. Shegrud that the information contained within his background information was inaccurate, incomplete and out of date by three years and the records had been sealed.

59. In addition to the email, Perch also sent a certified letter disputing the same information on or about January 27, 2020, which was received by Verisys on January 30, 2020.

60. On or about January 27, 2020, the 30 day investigation period for Verisys commenced as required by law. Verisys had 30 days to investigate the disputed information and report its findings back to Perch no later than February 25, 2020 in order to be compliant with FCRA and Verisys's own advertised policies. However, Verisys ignored this statutory deadline.

61. Upon Perch's review of his background report, Perch discovered that his background report containing previous employment verification was not completed by Accurate.

On January 13, 2020 Accurate only completed the previous employment background verification on Perch's former employer, Adventist Health. On January 14, 2020 Perch's offer for employment was rescinded by Angela Dale of BES during Perch's telephone call with Ms. Dale. The remainder of Perch's previous employment verification of Covenant Medical Center, Leerink, Pain Relief Centers and Catawba Valley Medical Center were all cancelled after BES received the initial criminal history report on the Verisys FACIS report from Accurate as it was being compiled in real time with BES.

62. Correspondence to Perch from BES dated January 9, 2020 stated, "before employment can begin BES requires successful completion of a background check and health screening". Perch's previous employment portion of his background check was cancelled by BES after the false criminal information was presented to BES by Accurate. This occurred after Perch's phone call on January 14, 2020 where his contract of employment had already been rescinded by Angela Dale of BES because of the FACIS report. Perch never became an employee of BES after his employment contract was cancelled. (See Exh. C. BES employment Agreement).

63. Perch sent an email to Vice President Angela Dale of BES on or about February 1, and 3, 2020 notifying her that the false criminal information that Perch had disputed with Accurate was removed from his background report. She never responded to these emails in writing.

64. Ms. Dale sent Perch an email on February 3, 2020 asking him to "call her". Perch returned her call and Ms. Dale informed Perch that the position had been filled.

65. Verisys failed to respond to Perch within the 30 day window required under law regarding the results of its investigation. On January 27, 2020 Perch sent a certified letter to Verisys which was received and signed for by Verisys on January 30, 2020 where Perch requested that Verisys investigate and remove the false, incorrect, out of date and misleading criminal

background information that Verisys transmitted to Accurate in a background check that Perch never authorized or consented Verisys to conduct. Verisys's lawyer responded to Perch's lawyer on March 23, 2020, day 57, after Perch's request informing Perch's lawyer that it had removed the criminal background information. The unauthorized background check and the 57 days it took Verisys to respond to Perch are both violations of FCRA. Verisys's lawyer represented to Perch's lawyer that it had removed the negative criminal information but never provided an updated FACIS report.

66. Verisys acted with complete disregard for federal law and Perch's rights under FCRA. Verisys is a CRA whose primary business is to sell consumer reports for profit to companies like BES or Accurate for purposes of facilitating employment decisions. Verisys was aware of the laws that applied to it contained within FCRA, judicial opinions that pre-date its illegal conduct and its membership in industry groups requiring compliance with these laws. Verisys was fully capable to read the DEA's website disclaimers. It did nothing to contact the DEA to update or verify the information about the 2017 reported arrest and check local court records before transmitting the information and determining whether Perch's criminal records were sealed.

67. Verisys had a duty to update and verify the accuracy of information it maintained in its database for a FACIS report before it transmitted or allowed Accurate to obtain such information and/or transmit it to any prospective employer. The details of the inaccurate outdated information were outlined in Perch's correspondence to Ms. Shegrud. Verisys never bothered to review any of Perch's court records with the county of Volusia located in Florida. Had it done so, Verisys would have discovered that there were no court records to review as Perch has no criminal record at the county, state or federal level. The state of Florida by court order declared that Perch

"was not adjudged guilty of, nor adjudged delinquent for committing any of the acts stemming from the arrest" and promptly sealed the record on October 22, 2018. Verisys could have also provided Perch with a copy of his report before furnishing it to another so that he could dispute and correct the outdated, incorrect, inaccurate and misleading information. However, both Verisys and Accurate chose not do so.

68.     Verisys did not update this information or remove the negative information as required by law before it provided the background FACIS level 3 report to Accurate.

69.     No pre-adverse or adverse letters were delivered to Perch by Verisys or Accurate and both companies provide FCRA compliance assistance to its customers.

70.     Perch began to experience anxiety and panic attacks in February, 2020 as a direct and proximate result of these FCRA violations which he had never experienced before. He went to his family doctor who prescribed inhalers to help Perch breathe during these attacks. Perch has had no underlying respiratory pre-existing condition to cause breathing problems.

71.     Later in March, 2020 the anxiety turned into depression and insomnia as a proximate result of these FCRA violations. Perch's physician prescribed him anti-depressant medication to help him sleep and help relieve his depression. Perch was never prescribed antidepressant medication prior to this.

72.     The above paragraphs help describe Perch's emotional distress caused as a result of Verisys's FCRA violations. Perch's 25 year career has been in the health care industry.

### COUNT I:
### DEFENDANT, VERISYS'S VIOLATION OF FCRA
### FCRA §607(b), 15 U.S.C. §1681e (b) AND FCRA §613, 15 U.S.C. §1681(k)

73.     Plaintiff restates and realleges the factual allegations contained in paragraphs 12 through 72.

74. Verisys is a CRA under FCRA.

75. Section 1681e(b) requires CRAs to follow reasonable procedures to assure the maximum possible accuracy of the information concerning an individual's report.

76. Section 1681(k) requires:

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose complies and reports items of information on consumers which are matter of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

77. Verisys never obtained Perch's consent to perform a background check nor did it inform Perch of his FCRA rights before it conducted its background information.

78. Verisys negligently or knowingly and willfully with reckless and conscious disregard for FCRA, transmitted unverified, outdated criminal information to another CRA, Defendant Accurate, ignoring the DEA disclaimer when it harvested the information from the DEA's website without ever informing Perch or that it was transmitting the information to any entity or individual.

79. Verisys did not take reasonable measures to assure the accuracy of the criminal information it harvested from the DEA website to check local courthouse records which would reflect Perch's 2017 arrest and criminal information records were sealed by court order in 2018 and willfully, recklessly and with conscious disregard violated §1681e(b).

80. Had Verisys followed basic and reasonable procedures to check local records it would have uncovered that these criminal records had been sealed.

81. Verisys failed to ensure the public record information it reported was complete and up to date accurate information pursuant to 15 U.S.C. §1681(k)(a)(2).

82. Verisys also failed to inform Perch that it was conducting a background check and reporting public information to another CRA destined to go to Perch's prospective employer, together with the name and address of the person it was providing the public information to.

83. Verisys eventually admitted that the criminal history information it provided was outdated, unverified and purportedly inaccurate and removed the information from its FACIS report in accordance with FCRA §611, 15 U.S.C. 1681(i) after Perch had a chance to dispute it. However, BES had already rescinded its employment of Perch based upon the information Verisys compiled in its FACIS.

84. As a direct and proximate result of Verisys's violations of FCRA, Perch suffered damages including lost wages and emotional distress.

85. These FCRA violations of Verisys were reckless, wanton, malicious, intentional and done with conscious disregard of Perch's rights justifying an award of punitive damages in an amount to be determined by a jury. Those actions that were not intentional were negligent under FCRA.

## REQUEST FOR RELIEF

Accordingly, Plaintiff respectfully requests that this honorable Court grant the following relief:

1. Judgment in his favor against Defendant and an award of monetary damages including punitive damages;

2. An award of attorney fees and costs incurred in prosecuting this action;

3. Prejudgment and post-judgment interest at the maximum rate allowed by law;

4. Trial by jury; and

5. All other relief to which he may be entitled.

                                                Respectfully submitted,

                                                CRAIG HENRY PLC
                                                James Craig

                                                /s/ James Craig
                                                401 West Main Street, Suite 1900
                                                Louisville, Kentucky 40202
                                                (502) 614-5962
                                                jcraig@craighenrylaw.com